# EXHIBIT 5

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA      .  CRIMINAL ACTION NO.
                             .    4:94-CR-121-Y
V.                           .
                             .  Fort Worth, Texas
BRUCE CARNEIL WEBSTER        .  June 18, 1996
. . . . . . . . . . . . . . . .

VOLUME 26
TRANSCRIPT OF THE TRIAL
BEFORE THE HONORABLE TERRY R. MEANS,
UNITED STATES DISTRICT JUDGE, and a jury.

APPEARANCES:

For the Government:       MR. RICHARD B. ROPER
                          MR. PAUL D. MACALUSO
                          MR. CHRISTOPHER CURTIS
                          Assistant United States Attorney
                          801 Cherry Street, Suite 1700
                          Fort Worth, Texas  76102-6897
                          (817) 978-3291

For the Defendant:        MR. LARRY M. MOORE
                          Attorney at Law
                          1112-A East First Street
                          Fort Worth, Texas  76102
                          (817) 338-4800

                          MR. ALLAN K. BUTCHER
                          Hill, Beatty, Butcher
                            & Gallagher
                          201 Main Street, Suite 1300
                          Fort Worth, Texas  76102
                          (817) 336-3600

Court Reporter:           Ana P. Warren
                          U.S. District Court Reporter
                          501 W. 10th Street, Room 204B
                          Fort Worth, Texas  76102-3637
                          (817) 335-3050

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

U.S. DISTRICT COURT

**EXHIBIT**

5

Direct - Roper/Parker          50

Q. Now, are there certain factors that affect how well a person does on an I.Q. test, how they perform on an I.Q. test?

A. Certainly.

Q. Would you explain to the members of the jury what those are?

A. Well, as in any kind of assessment procedure where you're trying to evaluate someone else, there are a number of factors that have to be considered, not the least of which is the attitude and the motivation and level of involvement of the individual who is being evaluated, and what the person expects is going to be the outcome of the examination. Those are some of the factors that are important.

Q. Now, in regards to that, would motivation play a role in how well somebody can do on an I.Q. test?

A. Yes, sir.

Q. Why would that be important?

A. Well, if you get drafted into the army, and you don't want to go into the army, and you know that if you look real dumb or crazy, then you may well be able to stay out of the army. On the other hand, if the goal is something that is really interesting to you and really appealing and you desire it strongly, then you're going to put forth your very best effort. So, yes, motivation is important.

Q. What about cultural differences? Could those play a role?

A. Cultural differences, of course. No one is sure why --

U.S. DISTRICT COURT

Direct - Roper/Parker          51

excuse me. No one is sure why, but in group scores, M.M.P.I. data vary according to ethnicity, and blacks, on the average, score about 10 to 12 points lower than white people. Although as I said, no one is really sure why. There is lots of speculation. There is lots of research on the issue to try to understand it, but there is a not reliable finding in the research.

I must also add that Oriental people score 10 to 12 points higher than white folks. Again, no one is sure why, but there are ethnic differences.

Q. Could the ability to understand certain English words, could that have an effect on the ability of someone to score an I.Q. test, how they score on an I.Q. test?

A. Yes.

Q. And why would that be important?

A. Well, the -- you know, the background, the sub-culture that one has been brought up in and participates in and subscribes to and so on, they may, in fact, use different concepts, different words, to mean certain things, and may value achievement in certain areas less than others and so on.

Q. Now, in regards to motivation, you mentioned that was a factor in determining how well someone does on an I.Q. test. Were you made aware of a certain Job Corps test that was given to Webster back in, I believe, 1992?

A. Yes, sir.

U.S. DISTRICT COURT

Direct - Roper/Parker          52

Q. And how well did Webster perform on that job skill test?

A. What the Job Corps test was, it was not an intelligence test, per se. Although, certainly, it would be some conceptual overlap in relationship. It was a reading comprehension test, and what it consisted of was little stories with a word left out, and then the person reading the story would be expected to go through a list of four choices to pick out the best word to put in that hole, and it was used as a screening test in Job Corps assessment programs.

On that particular test, Mr. Webster obtained a score of 76 percent correct, which would be a respectable score.

Q. Did you have occasion -- when you went out and examined the defendant, did you have occasion, here in 1996, to perform that same test?

A. Yes. I was interested in comparing his performance today on that particular task, and that was the task that -- what I was able to do was have my wife, who manages my office, make me up a new copy of that instrument, and then I re-administered it to Mr. Webster.

Q. How did he perform at this point in 1996?

A. Well, he got 44 percent of the items correct during this administration. So he did considerably poorer.

Q. When you speak of motivation, does motivation come into play when you're examining defendants charged with crimes?

A. Does motivation come into play when what?

U.S. DISTRICT COURT

Direct - Roper/Parker          53

Q. Well, do you take any particular -- and you mentioned you had a private practice and you examine folks out in the real world. And then you mentioned you examine people that are charged with crimes. Do you take any special effort in dealing with folks that are charged with a crime as opposed to if you were going to go out and give an I.Q. test and make an evaluation on someone out in the real world for mental retardation?

A. Yes, absolutely. It's very important.

Q. Why is that important?

A. Well, if you're sitting in your office and the patient comes in because he or she is having problems and they want help with it, and they are soliciting your professional services on their own hook, their own motivation, then the likelihood of trying to manipulate you or lie to you or deceive you or not do very well, it would be a pretty silly person to go to a doctor and then sit there and tell the doctor a bunch of lies about why he or she is there.

But in forensic settings, of course, there is often serious motivation to mislead or deceive or get over on you or whatever, because the nature of the contract is different.

Q. Could it involve overt lies as well as just not doing well?

A. Sure.

Q. Now, in regards to I.Q., you mentioned that I.Q. tests are generated for teacher evaluation; is that correct?

U.S. DISTRICT COURT

Cross - Roper/Moore            224

with Mr. Webster the issue of mental retardation, whether or not he was mentally retarded or any effect that a finding of mental retardation might have on the ability to execute the defendant.

At that time, he had already been tested by Dr. Raymond Finn. I don't believe that Dr. Keyes had completed any of his testing at that point. But that was the first -- to my knowledge and recollection, that was the first time that it was ever discussed with him or in his presence throughout our testing and throughout all the testing that was done. We have always told him that prior to the time that I advised him of the mental retardation issue on those occasions when Dr. Finn had tested him, our advice was for him to do the best he could do, to take the test, do as good as he could do, and we would go from there.

That would be the sum of the testimony we would offer.

THE COURT: Thank you.

Does the government wish to cross?

CROSS EXAMINATION

BY MR. ROPER:

Q. Well, are you familiar with jailhouse lawyers and folks that are in jail?

A. Uh-huh.

Q. Some of them are pretty knowledgeable about the law?

A. That's true.

U.S. DISTRICT COURT

Cross - Roper/Moore          225

Q. And have you ever heard of jailhouse folks talking and suggesting defenses for other defendants, even including capital murder defendants?

A. Yes, I have.

MR. ROPER: That's all I have.

THE COURT: All right. Thank you.

MR. ROPER: Your Honor -- I'm sorry.

MR. MOORE: That would be all that we would have in regard to that issue. We just wanted to make sure that that was before the Court.

THE COURT: All right. Thank you.

MR. ROPER: The only thing that we would have in addition to what we presented at trial would be, we would move to introduce Government's Exhibit 94-B, which is actually two transcripts, and then I had an excerpt of the transcripts that relate to the defendant's testimony -- or, actually, the colloquy he had with Judge McGlinchey on several occasion in the magistrate's court regarding how he wanted to hire a lawyer and what efforts he was doing to make bond, and I think those are relevant to the determination whether the defendant was mentally retarded.

That would be 93-B and C and 94-B. And C is actually a composite that has all the relevant portions. I didn't know if the Court wanted the whole transcript or not.

THE COURT: Okay. You're offering 93-A and B and 94-B?

U.S. DISTRICT COURT

229

EXHIBITS

| Exhibit Number | Offered | Admitted |
|---|---|---|
| Government's 117-B | 24 | 24 |
| Government's 117-C | 25 | 25 |
| Government's 117-D | 27 | 27 |
| Government's 117-E | 28 | 28 |
| Government's 117-F | 28 | 28 |
| Government's 117-H | 31 | 32 |
| Government's 117-J | 38 | 38 |
| Court's 8 | 221 | |
| Government's 93-B, 93-C, 94-B | 225 | 226 |

-oOo-

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter, and that the transcript was prepared by me and under my supervision.

Ana P. Warren, CSR #2302          Date
U.S. District Court Reporter

-oOo-

U.S. DISTRICT COURT