# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

April 28, 2010

No. 09-11039

Lyle W. Cayce
Clerk

In re: BRUCE CARNEIL WEBSTER,

Movant.

On Motion for Authorization to File
Successive 28 U.S.C. § 2255 Motion
in the United States District Court
for the Northern District of Texas

Before SMITH, WIENER, and PRADO, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Bruce Webster moves for an order authorizing the district court to consider a successive motion to vacate his federal death sentence under 28 U.S.C. § 2255, as amended by section 105 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Because he does not meet the procedural requirements of § 2255(h), we deny the motion.

I.

In June 1996, Webster was sentenced to death for his role in the kidnaping

No. 09-11039

and brutal murder of a sixteen-year-old girl.  He filed a direct appeal of his conviction, including among his nineteen assignments of error a challenge to the district court's finding that he was not mentally retarded.  We affirmed in all respects.  *United States v. Webster*, 162 F.3d 308, 358 (5th Cir. 1998), *cert. denied* 528 U.S. 829 (1999).  He then filed for relief under § 2255, which motion the district court denied, concluding that, even in the wake of *Atkins v. Virginia*, 536 U.S. 304 (2002), the evidence supported a finding that Webster was not mentally retarded.  *Webster v. United States*, No. 4:00-CV-1646-Y, 2003 WL 23109787, at *14 (N.D. Tex. Sept. 30, 2003).  And, after the district court granted a certificate of appealability on two of the issues concerning mental retardation, we again affirmed the sentence.  *United States v. Webster*, 421 F.3d 308, 310 (5th Cir. 2005), *cert. denied*, 549 U.S. 828 (2006).

Now Webster asks for another chance to argue that he is mentally retarded and therefore ineligible for the death penalty.[1]  Specifically, he contends that in light of newly discovered evidence––in the form of government and school records and additional testimony––no reasonable factfinder could conclude that he is not mentally retarded.

II.

Section 2255(h) governs the filing of second or successive motions:

A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain––

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

_____

[1] Webster's execution is stayed for reasons not related to the instant motion.

2

No. 09-11039

> (2) a new rule of constitutional law, made retroactive
> to cases on collateral review by the Supreme Court, that
> was previously unavailable.

28 U.S.C. § 2255(h).

This court has not had occasion to consider whether a petitioner seeking only to challenge his eligibility for the death penalty can do so under § 2255-(h)(1).[2] We now conclude that a petitioner cannot bring a successive claim under § 2255(h)(1) where he does not assert that the newly discovered evidence would negate his guilt of the offense of which he was convicted, *i.e.*, capital murder.

That result is compelled by the plain language of § 2255(h)(1), which does not encompass challenges to a sentence. Instead, it states that a petitioner wishing to rely on newly discovered evidence (as distinguished from being able to point to a qualifying new rule of constitutional law)[3] to support a second § 2255 motion must "establish by clear and convincing evidence that no reasonable factfinder would have found the movant *guilty of the offense.*" § 2255(h)(1) (emphasis added).

Webster nevertheless urges us to read "offense" broadly so that § 2255-(h)(1) would cover not only a claim that a prisoner is not guilty of the offense of conviction but also a claim that he is merely "not guilty of the death penalty." Such an interpretation accords with prior habeas corpus law interpreting "actual innocence" to include "innocence of the death penalty." *Cf. Sawyer v. Whitley*, 505 U.S. 333, 340-41 (1992). But, as Judge Posner cogently explained,

---

[2] Nor have we had occasion to consider that question with regard to 28 U.S.C. § 2244(b)-(2)(B)(ii), which includes the same language. Section 2255 governs collateral attacks on federal convictions; § 2244, attacks on state court convictions. Nevertheless, "[b]ecause of the similarity of the actions under [these sections], they have traditionally been read *in pari materia* where the context does not indicate that would be improper." *United States v. Flores*, 135 F.3d 1000, 1002 n.7 (5th Cir. 1998).

[3] *See* § 2255(h)(2).

No. 09-11039

Courts that before the amendment had to decide whether an application for postconviction relief came within the "actual innocence" exception to the requirement of proving cause and prejudice in order to be permitted to revive a waived ground for relief extended the exception to sentencing issues . . . . But we do not think the exception survives the amendment. The "actual innocence" exception of the prior law was judge-made, and so its contours were appropriately judge-fashioned and permissibly judge-expanded. The exception in the new law is graven in statutory language that could not be any clearer. When we consider . . . the absence of any indication in the legislative history that 'offense' was being used in some special sense different from its ordinary meaning, we think it highly unlikely that Congress intended the word to bear a special meaning.

*Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997) (Posner, J.).[4]

That is to say, there is no reason to believe that Congress intended the language "guilty of the offense" to mean "eligible for a death sentence."[5] Had Congress wanted the provision to cover challenges to a sentence––even if only to a death sentence––it easily could have referenced sentences explicitly in the text, as it did numerous times throughout § 2255.[6] Or if Congress had intended

---

[4] *See also In re Dean*, 341 F.3d 1247, 1248-49 (11th Cir. 2003); *In re Jones*, 137 F.3d 1271, 1274 (11th Cir. 1998); *Burris v. Parke*, 130 F.3d 782, 785 (7th Cir. 1997); *Burris v. Parke*, 116 F.3d 256, 258 (7th Cir. 1997); *In re Medina*, 109 F.3d 1556, 1565-66 (11th Cir. 1997), *overruled on other grounds by Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998). Two other circuits addressed the issue but avoided deciding it. *See LaFevers v. Gibson*, 238 F.3d 1263, 1267 (10th Cir. 2001) ("[T]here is a split among the three circuits that have addressed the question . . . . This court need not resolve that difficult question . . . ."); *In re Vial*, 115 F.3d 1192, 1198 n.12 (4th Cir. 1997) (en banc) ("We need not address the question of whether, under the AEDPA, an individual subject to a sentence of death may assert the existence of new evidence establishing that the sentence was imposed improperly, *i.e.*, that he is "innocent" of the death penalty.").

[5] By this we do not mean to suggest that a prisoner is jurisdictionally barred from seeking successive review where he contests a factual predicate of his capital murder conviction, without which he would have been guilty only of non-capital murder. *Cf. Thompson v. Calderon*, 151 F.3d 918, 923-24 (9th Cir. 1998) (en banc).

[6] *Cf., e.g.*, 28 U.S.C. § 2255(b) ("If the court finds that the judgment was rendered without jurisdiction, or that *the sentence imposed* was not authorized by law or otherwise open to
(continued...)

4

No. 09-11039

to signal courts to incorporate the old, broad interpretation of actual innocence, it well could have used the words, "actual innocence."[7]  Instead, it elected to couch § 2255(h)(1), as well as § 2244(b)(2)(B)(ii), in the markedly different, unmistakable terms of *guilt of the offense.*  Absent some indication that Congress meant for the language in § 2255(h)(1) not to be taken literally, we decline to interpret it any other way.

In summary, Webster's application does not satisfy § 2255(h)(1), and § 2255(h)(2) is inapplicable.  The motion for authorization to file a successive § 2255 motion is DENIED.[8]

---

[6] (...continued)
collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner *or resentence him* or grant a new trial *or correct the sentence* as may appear appropriate.  (Emphasis added.)).

[7] Or, indeed, "eligible for the death penalty," per *Sawyer*, 505 U.S. at 336.  *See Thompson*, 151 F.3d at 923 (noting that the difference between the language in *Sawyer* and the language in § 2244(b)(2)(B)(ii) could suggest that Congress chose to deviate from it).

[8] Our decision that the instant motion is beyond the reach of § 2255 is jurisdictional in nature, going to the ability of the district court and this court to entertain the § 2255 motion in the first instance.  The result makes it unnecessary for this court to address whether, as the government claims, the evidence that Webster seeks to introduce is neither newly discovered nor substantive.

No. 09-11039

WIENER, Circuit Judge, concurring:

I concur in the majority opinion, as I believe that it is a correct interpretation of 28 U.S.C. § 2255(h), but I write separately to emphasize the absurdity of its Kafkaesque result: Because Webster seeks to demonstrate only that he is constitutionally ineligible for the death penalty — and not that he is factually innocent of the crime — we must sanction his execution.

If the evidence that Webster attempts to introduce here were ever presented to a judge or jury for consideration on the merits, it is virtually guaranteed that he would be found to be mentally retarded. In 1993 — more than a year before his indictment for the offense of conviction — Webster applied for Social Security benefits.[1] To determine his eligibility for those benefits, three separate government physicians performed medical and psychological examinations on him. Notably, all three physicians independently concluded that Webster is mentally retarded. First, Dr. Rittelmeyer diagnosed Webster as suffering from "[m]ental retardation." Then, Dr. Spellman described Webster as "a slow fellow who did not know much and did not know how to communicate well." Explaining that he had found no evidence of exaggeration or malingering during his examination, Dr. Spellman concluded that Webster's IQ was 69 or lower and that his significant cognitive difficulties were attributable not to mental illness but to "mental retardation." Finally, Dr. Hackett performed an IQ test and concluded that Webster's IQ was 59. Dr. Hackett described Webster as "mildly retarded," "antisocial," and unable to "function well in the work place."

These reports, the merits of which have never been considered by any

---

[1] Although Webster's counsel requested these Social Security records long before his trial, they were only recently produced. And, when Webster sought additional discovery in connection with his first habeas petition, the district court denied his motion — just two days before the Supreme Court's landmark decision in *Atkins v. Virginia,* 536 U.S. 304 (2002) — and required that he file his petition within sixty days, i.e., less than two months after *Atkins* was decided and without the benefit of additional discovery.

No. 09-11039

judge or jury, refute much of the evidence introduced by the government at the penalty phase of Webster's trial. For example, the government's physicians — all of whom examined Webster while he was incarcerated for the offense of conviction — suggested that he was malingering and exaggerating his symptoms in the hopes of being found ineligible for the death penalty. In contrast, none of the Social Security physicians who diagnosed Webster's mental retardation many years earlier noted any such evidence. Moreover, at trial, the government introduced testimony that Webster had never been placed in special education classes, which weighed further still against a finding of mental retardation. Again, though, the Social Security records tell a different story. Specifically, a letter to the Social Security Administration from Lou Jackson, the Special Education Supervisor for the Watson Chapel Schools, indicates that Webster was indeed enrolled in special education classes but that the records of his enrollment there were destroyed in 1988 after his family did not respond to a letter "telling them they could have the records if they wanted them."[2] Under § 2255(h), however, we must turn a blind eye to this evidence, as it speaks to Webster's constitutional eligibility for the death penalty and not his factual guilt or innocence of the crime.

The Supreme Court explained in *Atkins v. Virginia* that because mentally retarded persons suffer from "disabilities in areas of reasoning, judgment, and control of their impulses, they do not act with the level of *moral culpability* that

---

[2] Of course, this is all in addition to the already substantial evidence of mental retardation that Webster introduced before the trial court, including, *inter alia*, testimony from Doctor Finn that Webster's IQ was 59; testimony from Dr. Keyes that Webster had an IQ of 51 with the adaptive functioning of a seven-year-old; testimony from Dr. Cunning that Webster suffered from mild mental retardation; and testimony from several witnesses familiar with Webster's adaptive deficits in communication, conceptual skills, home living, functional academics, and day-to-day life.

characterizes the most serious adult criminal conduct."[3]  Thus, "in the light of our evolving standards of decency," the Court held that the Eighth Amendment prohibits as excessive the execution of mentally retarded defendants.[4]  Although I concur in the majority's opinion as a correct statement of the law, I continue to harbor a deep and unsettling conviction that, albeit under Congress's instruction which ties our judicial hands so illogically, we today have no choice but to condone just such an unconstitutional punishment.

---

[3]  536 U.S. at 320 (emphasis added).

[4]  *Id.*